521 A.2d 779

**PRINCE GEORGE'S COUNTY, et al**

v.

**ZAYRE CORPORATION.**

**No. 706, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

March 4, 1987.

Tonia Y. Belton, Associate Co. Atty. (Thomas P. Smith, Co. Atty., Michael O. Connaughton, Deputy Co. Atty. and Michael G. Comeau, Associate Co. Atty., on the brief), Upper Marlboro, for appellants.

Thomas J. Schetelich (Allen, Thieblot & Alexander, on the brief), Baltimore, for appellee.

Argued Before BISHOP, ROBERT M., BELL and POLLITT, JJ.

BISHOP, Judge.

Betty Roberts filed a complaint with Prince George's County Human Relations Commission (HRC or Commission) against Zayre Corporation on April 3, 1980. In that complaint, Roberts alleged discrimination based on race and sex when Zayre discharged her from her job as a security guard. On December 7, 1982, after a hearing, an HRC employment panel found that Zayre discriminated against Roberts based on her race in violation of sections 2–185, 2–186, 2–222 of the Prince George's County Code. Based on these findings, the Commission ordered Zayre to reinstate Roberts with back pay.

When Zayre refused to comply with this order, HRC filed a complaint in the Circuit Court for Prince George's County to enforce the order. Pursuant to section 2–197 of the Prince George's County Code, Zayre presented two days of additional testimony, which indicated that Roberts' dismissal was not racially motivated. After hearing this additional testimony, the judge concluded that "this case comes down to an issue of credibility ... [and] the only thing a trier of fact has to do is to decide which witnesses the trier of fact is going to believe." Since the judge had the opportunity to hear only the new testimony introduced by Zayre, he found it to be an impossible task to balance that live testimony against the written transcript upon which the Commission based its original determination of discrimination. Accordingly, the court remanded the case to HRC so that the original finder of fact could reevaluate its conclusions "in light of all the evidence as may be before it, including the evidence originally presented to said Commission and the evidence presented to this court at the hearing on this matter."

In most cases, the Commission could handle this matter in a routine manner: the original panel would reassemble to hear the additional testimony and then modify or reaffirm their findings as the new evidence warrants. In this case, however, the composition of the panel had changed entirely

since the first hearing, so that none of the panel members on remand had heard the original testimony.

The panel again determined that Zayre discriminated against Betty Roberts and recommended that the HRC reaffirm the original order, the conclusion that the Commission ultimately adopted. In reaching its conclusions, the second panel relied on the written transcript of the testimony introduced both before the first panel and the circuit court. Although the panel offered to the parties the opportunity to adduce additional testimony, not yet heard before either the first panel or the circuit court, it explicitly declined Zayre's request to conduct a *de novo* hearing.

When Zayre refused to comply with its second order, the Commission again sought to enforce the order in the circuit court. This time, the court took exception to the fact that the new panel reached its conclusion without having heard either the live testimony produced before the original HRC hearing or that heard by the court, precisely what the court had stated it could not do. Accordingly, the court remanded the case with the express instructions that the HRC conduct a *de novo* hearing so that an entire panel would have the opportunity to hear and evaluate the testimony and thus be in the position to assess fully credibility.

On appeal, the Commission raises the following issues:

I. Whether the court erred when it remanded the case to the Commission for a *de novo* hearing;

II. Whether the Commission's decision is supported by substantial evidence;

III. Whether the doctrine of preclusion bars further litigation of this matter; and

IV. Whether Zayre waived its right to further litigation of this case.

## FACTS

Zayre Corporation hired Betty Roberts as a security guard in November of 1975. For over four years, Roberts

maintained a good working relationship with Zayre, earned a good work record and, after her first two years, received a promotion to the position of security manager. During this latter period, complainant began to bring her daughter with her to help with minor tasks at the store. This practice continued for over three years until Roberts' termination on April 20, 1980.

In October of 1979 Roberts was transferred to Zayre's Branch Avenue store, as a security manager. After several months at her new position, problems began to arise between Roberts and her immediate supervisor, Mr. Angelo, the store manager. In January of 1980, Mr. Angelo issued a written notice of poor work performance to Roberts. Less than one month later, she received a second notice of her failure to improve sufficiently her job performance. At no time during her employment with Zayre, however, was complainant reprimanded for allowing her daughter to assist her with minor work duties.

On April 2, 1983, Angelo fired Roberts because she breached company policy by permitting her daughter to work "off-the-clock." [1] Zayre management had given no prior notice to the complainant that she was violating company policy by having her daughter assist her in her work. Zayre contends that it had no prior knowledge of Roberts' daughter accompanying and assisting her mother on the job and dismissed Roberts immediately upon discovering that fact. Roberts vigorously contends that Zayre had prior knowledge of her daughter's, as well as other employees' children, working off the clock. It is undisputed that Roberts' work performance, other than this specific breach of company policy, was never mentioned as grounds for her dismissal.

In her complaint filed with the Prince George's County Human Relations Commission one day after her discharge,

---

1. "Off-the-clock"—to work without having official or formal personnel status.

Roberts alleged that Zayre had treated her differently than the similarly situated white employees, who were not discharged because they had their children assist them on the job.[2]

## I.

### Remand for a De Novo Hearing

The HRC brought this action pursuant to section 2–197 of the Prince George's County Code, which provides:

Enforcement of orders by Court.

If any complainant or respondent refuses to comply with an order of the Commission made within the scope of this Division, the County, on behalf of the Commission, may initiate a suit in equity in the Circuit Court to enforce compliance with any of the provisions of this Division. The Court, in hearing the case shall be governed by the judicial review standards as set forth in the Administrative Procedure Act (Sections 255–56 of Article 41 of the Annotated Code of Maryland) except that additional evidence if otherwise admissible under the law of evidence, may be presented to the Court without the necessity of an application or without the necessity of showing reasons for the failure to present it at the hearing before the Commission.

Whenever the Commission invokes this right of enforcement, the statute accords to the party against whom the HRC has filed to enforce its order, a correlative right to contest the Commission's order and to present additional evidence to the circuit court "without the necessity of an application or without the necessity of showing reasons for the failure to present it at the hearing before the Commission." PRINCE GEORGE'S COUNTY CODE § 2–197 (1979).

---

**2.** In her complaint, Roberts also charged Zayre with discrimination on the basis of gender, but the Commission found no grounds for these charges.

Section 2-197 incorporates by reference several sections of the Administrative Procedure Act as the standard of review to be employed by the circuit court, including article 41, Section 255 [3] of the Maryland Code, which provides in pertinent part:

(a) *Right to review*—Any party aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under this subtitle.

\* \* \* \* \* \*

(b) *Additional evidence*—If, before the date set for hearing, application is made to the court for leave to present additional evidence on the issues in the case and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken in open court or before the agency upon such conditions as the court deems proper. In cases in which the additional evidence is taken before the agency, it may modify its findings and decision by reason of the additional evidence and shall file with the reviewing court, to become a part of the record, the additional evidence, together with any modifications or new findings or decision.

\* \* \* \* \* \*

(g) *Affirmance, remand, reversal or modification of decision*—The court may affirm the decision of the

---

**3.** Section 2-197 refers to article 41, sections 255 and 256 of the Maryland Code. In 1978, the legislature amended and recodified these sections of the Administrative Procedure Act under MD. STATE GOV'T CODE ANN. §§ 10-215, 10-216 (1984). Although the county has not updated section 2-197 to reflect this recodification, reference to sections 255 and 256 is not problematic. As the Revisor's Note for section 10-215 states, "[t]his section is new language derived without substantive change from former art. 41, § 255." Since the differences between old section 255 and new section 10-215 do not affect the outcome of the instant case, we will refer to section 255 out of convenience and to remain consistent with section 2-197.

agency or remand the case for further proceeding; or it may reverse or modify the decision if the substantial rights of the petitioners had been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> \* \* \* \* \* \*

(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

(6) Against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the agency and including de novo evidence taken in open court; ...

Pursuant to this statute, the circuit court has the option of receiving the additional evidence "in open court" or directing the agency to consider that evidence "upon such conditions as the court deems proper." MD.ANN.CODE art. 41, § 255(e) (1978 & Supp.1982). *Lucke v. Commissioner of Personnel,* 245 Md. 706, 709, 228 A.2d 313 (1967), *cert. denied,* 392 U.S. 926, 88 S.Ct. 2270, 20 L.Ed.2d 1384 (1968). In reviewing the agency's determination, the court assesses the adequacy of the evidence under the substantial evidence standard and has the power to affirm, remand, reverse or modify the Commission's decision. MD.ANN.CODE art. 41, § 255(g) (1978 & Supp.1982).

■ In the case *sub judice,* the circuit court remanded the case to the Commission for a *de novo* hearing. The court resorted to this measure because it concluded that the employment panel as the finder of fact must assess the credibility of the witnesses. Since none of the members of the current panel had the opportunity to hear testimony that was introduced originally before the former Commission, a *de novo* hearing became necessary to adjudicate the facts in a fair and just manner. The HRC objects to the court's order, and contends that the statute, which provides that a case may be remanded "for further proceeding,"

does not authorize the court to require the Commission to conduct a *de novo* hearing. *Id.* § 255(g). We disagree.

■ First, in authorizing the circuit court to remand "for further proceedings," the statute does not expressly prohibit the court from ordering that the agency conduct a *de novo* hearing. Admittedly, the phrase "for further proceedings" does suggest that the reviewing court may remand the case to the hearing panel so that it can reevaluate the case in light of the additional evidence and, normally, a remand "for further proceedings" should be nothing more than this. Under certain circumstances, however, a *de novo* hearing is appropriate. These circumstances, are: (1) the original trier of fact becomes unavailable and is consequently replaced by a second trier of fact; and (2) the material issues of the case turn on conflicting evidence in which the demeanor and credibility of lay witnesses is a crucial factor. *E.g., Citizens for Rewastico Creek v. Commissioners of Hebron,* 67 Md.App. 466, 477–85, 508 A.2d 493 (1986) (holding that it was not error when the substitute hearing examiner refused to hear testimony of certain expert witnesses, in that demeanor or manner of the expert witnesses was not a material factor in the proposed decision); *Van Teslaar v. Bender,* 365 F.Supp. 1007, 1012–13 (D.Md.1973) (holding that without *de novo* hearing, party was deprived of a fair hearing when there was a substitution of hearing examiners midway in the administrative evidentiary proceedings, and when the resolution of the conflicting testimony required a determination of the credibility of witnesses); *Gamble-Skogmo, Inc. v. Federal Trade Commission,* 211 F.2d 106, 115–18 (8th Cir.1954) (invalidating FTC order because substitute examiner, who replaced retired trial examiner, based his decision on evaluation of credibility of witnesses whom he had not seen); *Stevens Chevrolet, Inc. v. Commission on Human Rights,* 498 A.2d 546, 550–51 (D.C.1985) (stating that when resolution of conflicting testimony hinges upon credibility of witnesses, trier of fact must hear all the evidence, even if it entails a *de novo* hearing).

Obviously, the salient features of the instant case also require a remand for a *de novo* hearing. Each member of the original employment panel had retired or resigned from the agency and had been replaced by individuals who had not heard the original testimony. Since the resolution of the case turned on the assessment of the lay witnesses' demeanor and credibility, we conclude that the circuit court did not err when it ordered the Commission to conduct a *de novo* hearing.

Second, courts in Maryland have recognized that " '[a]n agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down.' " *Hopkins v. Maryland Inmate Grievance Commission*, 40 Md.App. 329, 335–36, 391 A.2d 1213 (1978) (quoting *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir.1969)); *accord Williams v. McHugh*, 51 Md.App. 570, 573, 444 A.2d 475 (1982); *Board of Education of Anne Arundel County v. Barbano*, 45 Md.App. 27, 41, 411 A.2d 124 (1980). *See also* 2 AM.JUR.2d *Administrative Law* § 350 (1962) (discussing agency's disregard, waiver or suspension of its own rules). While acknowledging exceptions exist, this rule clearly applies "when the regulations are intended primarily to confer important procedural benefits upon individuals." *Barbano*, 45 Md.App. at 41, 411 A.2d 124; *accord Hopkins*, 40 Md.App. at 336, 391 A.2d 1213.

In the case *sub judice*, the HRC Rules of Procedure permit only "present and participating" hearing Commissioners from taking part in its deliberation:

> The hearing Commissioners shall deliberate and reach their decisions in executive sessions. All decisions of the hearing panel shall be by majority vote of Commissioners *present and participating* in the hearing.

HRC Rule 12(a) (emphasis added). When the panel members deliberated and rendered a decision without hearing the testimony, the Commission violated Rule 12(a) and thus denied Zayre the fundamental procedural right of having

the trier of fact assess the credibility of the witnesses. Accordingly, we hold HRC's failure to comply with this procedural rule constitutes reversible error and another basis for requiring the Commission to conduct a *de novo* hearing.

And finally, we note in passing that the Commission's actions may have deprived Zayre of its due process rights pursuant to both Federal and State Constitutions. U.S. CONST. amend XIV, § 1; MD. CONST. art. 24. The Commission was functioning in a quasi-judicial capacity in which the panel members were hearing a complaint by one private party against another, making factual findings, awarding damages, and ordering other remedies. *See Department of Natural Resources v. Linchester Sand and Gravel Corporation*, 274 Md. 211, 222, 334 A.2d 514 (1975) (discussing the quasi-judicial role that agencies play). Under such circumstances, HRC's refusal to hear the case when the credibility of conflicting testimony from lay witnesses plays a central role in its determination raises serious questions regarding denial of Zayre's due process rights. Since it is not necessary for us to decide the case on the constitutional basis, we will follow the well settled judicial principle of not deciding the constitutional issue unnecessarily. *Hillard v. State*, 286 Md. 145, 150 n. 1, 406 A.2d 415 (1979); *State v. Raithel*, 285 Md. 478, 484, 404 A.2d 264 (1979); *Miller v. Maloney Concrete Company*, 63 Md.App. 38, 47, 491 A.2d 1218 (1985).

## II.

### Remaining Issues

■ The HRC has raised three other issues on appeal: whether substantial evidence supports the Commission's decision; whether the doctrine of preclusion bars further litigation; and whether Zayre waived its right to further litigation. As to the first, it is obvious that the additional testimony raised serious doubts about the credibility of the earlier testimony, the resolution of which only the original

trier of fact could provide. The circuit court had no choice but to remand the case and have the Commission consider the additional evidence before it could even apply the substantial evidence standard of review.

■ As to the latter two objections, the issues of preclusion and waiver, they merit only passing reference. This Court has stated:

The APA contemplates that the circuit court, while ordering additional evidence to be received by the agency, retains continuing jurisdiction over the appeal. After the agency has completed its action, the circuit court may then proceed with its consideration of the appeal on the merits.

*Breedon v. Maryland State Department of Education,* 45 Md.App. 73, 86–87, 411 A.2d 1073 (1980). When the court in the instant case remanded the case to the agency the first time, it retained continuing jurisdiction over the appeal. Accordingly, we reject the argument that the doctrine of preclusion or waiver bars further litigation.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.